IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| James Joseph Wisniewski, ) | |
| ) | Civil Action No.2:12-cv-1230-MGL-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Sheriff Steven Mueller and Major ) | |
| Ted Padgett, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, a pretrial detainee proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 22) and Plaintiff's Motion to Amend (Dkt. No. 26).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about May 9, 2012. (Dkt. No. 1.) Defendants filed a Motion for Summary Judgment on August 3, 2012. (Dkt. No. 22.) By order filed August 7, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 23.) On or about August 29, 2012, Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment; at the same time, he filed his Motion to Amend. (Dkt. No. 25; Dkt. No. 26.)

**PROCEDURAL FACTS**

Plaintiff, who is currently a pretrial detainee at Cherokee County Detention Center ("Detention Center"), alleges claims pursuant to 42 U.S.C. § 1983. Plaintiff alleges that since

he has been in the Detention Center, Defendants have "on several occasions, had mail or parts thereof[] illegally confiscated and destroyed or given away." (Dkt. No. 1 at 3 of 5.) According to Plaintiff, these "items have included pictures, news articles, jokes, song lyrics, and the like." (Id.) Plaintiff states that "[n]one of these items were gang related or copyrighted materials." (Id.)

Plaintiff further alleges that "Defendants or persons under their chain of command illegally violated the Plaintiff's right to mail privacy by, on several occasions, completely reading the Plaintiff's mail." (Id.) He complains "Defendants also violated . . . [Plaintiff's] rights to practice his religious beliefs by denying him reasonable access to the . . . mail by denying him the ability to receive paper back [sic] books on studying his faith, Christian magazines, Christian sermon pamphlets, Bibles, and other Christian materials." (Id.) Plaintiff states, "These items were also taken illegally thus violating [Plaintiff's] property rights also these items were either destroyed or given away to other entities without [Plaintiff's] permission or prior notification." (Id.)

Plaintiff seeks actual and punitive damages. (Id. at 5 of 5.) Plaintiff also asks that the Court issue an injunction requiring all United States mail opened at the Detention Center "to be opened in the presence of all inmates receiving mail and/or all mail addressed to the Plaintiff to be opened in his presence." (Id.)

**DISCUSSION**

As noted above, Defendants filed a Motion for Summary Judgment on August 3, 2012. (Dkt. No. 22.) Plaintiff filed a Motion to Amend his Complaint (Dkt. No. 26) at the same time he filed his Response in Opposition to the Motion for Summary Judgment. (Dkt. No. 25.) The undersigned will address the Motion for Summary Judgment first.

**A. Motion for Summary Judgment (Dkt. No. 22)**

    **1. Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

    **2. Analysis**

In Hause v. Vaught, 993 F.2d 1079 (4th Cir. 1993), the Fourth Circuit addressed a First Amendment claim that is very similar to one of Plaintiff's claims. In Hause, the pretrial detainee plaintiff contended, *inter alia*, that the Horry County Detention Center's restrictions on the receipt of outside publications violated the First Amendment. Hause, 993 F.2d at 1081. The Fourth Circuit disagreed and affirmed the award of summary judgment to the defendants. Id. at 1079. While noting that in Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court recognized that pretrial detainees retain constitutional protections despite their confinement, the Fourth Circuit stated that "[a] detainee's First Amendment rights may be restricted in the interest of prison security." Hause, 993 F.2d at 1082. Although Turner v. Safely, 482 U.S. 78, 89 (1987), involved prisoners and not pretrial detainees, the Fourth

3

Circuit concluded the Turner standard was the appropriate "standard to determine the constitutionality of the [Horry County] Detention Center's restrictions on the receipt of publications." Hause, 993 F.2d at 1082. The Fourth Circuit explained the Turner analysis as follows:

> In *Turner*, the Supreme Court applied what amounts to a two-part test. First, "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 89 (internal quotation omitted). The Court emphasized that the governmental interest must be legitimate and neutral. Id. at 90. Once a rational connection to a legitimate governmental interest has been established, the second inquiry is whether the challenged regulation is reasonably related to that interest. In evaluating reasonableness, a court must consider whether "there are alternative means of exercising the right that remain open to prison inmates," as well as "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id.
>> [T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns. This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.
> Id. 482 U.S. at 90-91.

Hause, 993 F.2d at 1082.

The plaintiff in Hause conceded that the detention center's policies were "rationally related to the legitimate, neutral penological interest of preventing the use of publications to smuggle contraband and start fires." Hause, 993 F.2d at 1083. The court's analysis thus focused on whether the detention center's "ban on outside publications was reasonably related to the objective of preventing smuggling and fires." Id. The Fourth Circuit concluded

the ban was reasonably related to the center's interest in preventing contraband and fires, rejecting the plaintiff's proposed publishers-only rule because, *inter alia*, there was no "evidence regarding the extent to which the proffered alternative would enhance [his] ability to exercise his constitutional rights," and the rule "would not address the Detention Center's legitimate concern that publications could be used to start fires." Id.

In the instant case, Defendants attached the Affidavit of Robert Eugene Padgett, administrator of the Detention Center, to their Motion for Summary Judgment. (Dkt. No. 22-3.) Padgett states therein that "[u]pon arrival at the Detention Center, each detainee reviews the Detention Center Inmate Orientation Handbook regarding the Detention Center's policies and procedures." (Padgett Aff. ¶ 3.) According to Padgett, "Detention Center staff receives and inspects all incoming mail for contraband" pursuant to these policies and procedures. (Id.) Padgett further states, "The Detention Center staff also inspects all incoming mail for contraband pursuant to the Detention Center's Communications, Mail, and Visitation, Policy Number 13-1-1." (Id. ¶ 4.) Section 17 of the Detention Center's Inmate Orientation Handbook provides, in relevant part,

> All incoming mail is to be <u>standard envelopes with a return address and the inmate's name</u> and will be opened and inspected for contraband, cash money, and other unauthorized items and then distributed to the inmates. Any mail that does not have a return address will be placed directly in the inmate's personal property in the property room after it has been inspected. . . . Large packages may not be accepted and may be "Returned to Sender," unless the package is from the inmate's attorney. Official mail from attorneys and the courts may be sent in any type of container, but **may be opened and inspected in front of the inmate**.

(Padgett Aff. Ex. A.) Defendant Mueller attached a copy of the Detention Center Mail Regulations to his Affidavit. (See Mueller Aff. Ex. A.) This policy states, in relevant part,

> **The following items are not allowed to be received through the mail**:
>
> ■    Food or cosmetic items
>
> . . .

- Cash, personal or second party checks, traveler's checks, payroll checks
. . .
- Paper clips, staples, pens, pencils, glitter, stickers, glued or gummed labels
. . .

**With respect to photographs and computer generated pictures, the following will apply**:

- A maximum number of three (3) photographs are allowed (inmates are only allowed to possess three (3) photographs at any time
- The maximum size of photographs allowed are 2" x 3" in size.
- Photographs or pictures that are nude, suggestive, showing gangs, gang tattoos, or hand gestures (signs) are not allowed.

**With respect to books, publications, or periodicals, we will not accept**:

- Anything of an explicit or sexual nature
- Any books or magazines for a specific inmate (all items donated will be distributed throughout the Detention Center)

A soft cover bible may be left at the main window for a specific inmate.

**NOTE: The items listed above are current, however, the Cherokee County Sheriff's Office and the Cherokee County Detention Center reserve the right to continually update this list and to return any mail item(s) if those item(s) are deemed potentially harmful or may cause a possible insecure environment to the general inmate community.**

(Mueller Aff. Ex. A.)

Padgett explains that the Detention Center "limits the amount of paper materials which can be kept in a detainee's cell to maintain a safe and secure environment" for detainees and Detention Center Staff. (Padgett Aff. ¶ 5.) Padgett states,

> If paper materials were permitted to accumulate inside cells, potential fire hazards and other safety and security concerns can be created. Based upon my knowledge and experience, quantities of paper materials can be used by detainees to create weapons. Based upon my knowledge and experience, quantities of paper materials can also be used to hide unauthorized items in a detainee's cell.
> . . . .
> 8. In accordance with the Cherokee County Sheriff's Office Detention Center Mail Regulations, detainees are permitted to have three pictures, including photographs and computer generated pictures, in their cell at any given time.

> Additional pictures are not allowed so that paper materials do not accumulate in cells.
> 9. It is the Detention Center's policy that items mailed to a detainee that could potentially violate the intellectual property rights of others are removed from the detainee's mail, such as materials that appear to have been copyrighted that have been re-typed.

(Id. ¶¶ 5, 8-9.) According to Padgett, the only items removed from Plaintiff's mail were as follows:

> A *Milwaukee Post* newspaper article entitled "How Good Are the 2011 Packers?"
>
> Four pages of computer-generated images and cartoons;
>
> Twenty-two pages of re-typed song lyrics;
>
> A page of re-typed jokes;
>
> Two pages of news articles "apparently copied and pasted from various internet sources";
>
> A one-page article about smiling "apparently copied and pasted from an internet source"; and
>
> One page "of typed daily entries apparently from a religious calendar."

(Dkt. No. 22-1 at 4-5; Padgett Aff. ¶ 10 & Ex. C.)

Inmates clearly retain some of their First Amendment rights. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, as noted above, although pretrial detainees retain constitutional protections despite their confinement, "[a] detainee's First Amendment rights may be restricted in the interest of prison security." Hause, 993 F.2d at 1082. Pursuant to the first part of the two-part test set forth in Turner, "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 89 (internal quotation omitted).

Courts routinely uphold prisons' regulations pertaining to incoming mail when the regulations promote security at the institution. See United States v. Stotts, 925 F.2d 83, 86

7

(4th Cir. 1991) (no constitutional violation in BOP requirement that "a legal sender be specifically identified and . . . that confidential mail be marked as such" because the requirements advance security and administrative concerns); Pelzer v. McCall, No. 8:10-CV-1603-MBS-JDA, 2011 WL 4549387 (D.S.C. June 29, 2011) (adopted at 2011 WL 4549368 (D.S.C. Sept. 30, 2011)) (finding the defendants demonstrated a valid, rational connection between the prison policy of limiting possession of radios, batteries, newspapers, and magazines and the legitimate governmental interest in preventing prison security issues); Oliver v. Powell, 250 F.Supp.2d 593, 607 (E.D. Va. 2002) (upholding regulation requiring all incoming correspondence to be opened, searched, and read because, *inter alia*, the "neutral regulation . . . is reasonably related to the legitimate governmental interest of prison safety and security" where defendants "submit[ted] that the regulation was instituted to suppress contraband and maintain discipline, health, safety and security"). The regulations may be upheld when there is a "valid, rational connection" between the regulation and the legitimate governmental interest put forward to justify it. Block v. Rutherford, 468 U.S. 576, 586 (1984); see also Dixon v. Kirby, 210 F. Supp. 2d 792 (S.D. W.Va. 2002) (upholding policy prohibiting inmates' receipt of mail order catalogs where Defendants claimed that allowing catalogs would overwhelm the prison's mail room).

However, "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Turner, 482 U.S. at 89-92; see also Couch v. Jabe, 737 F.Supp.2d 561 (W.D. Va. 2010) (regulation that excluded the books *Ulysses* and *Lady Chatterley's Lover* from the prison library and prevented inmate from ordering the books from a private, approved vendor violated the First Amendment). Certainly Defendants have presented a valid, rational connection between the policy limiting the amount of paper materials that can be kept in a detainee's cell and the security of the Detention Center. (See Padgett Aff.) What Defendants

8

have not presented is any connection–rational or otherwise–between the policy prohibiting detainees from receiving items "that could potentially violate the intellectual property rights of others" and the security (or any other governmental interest) of the Detention Center.[1] "Failure to satisfy the first [Turner] factor[] renders the regulation unconstitutional without regard to the remaining three factors." Jones v. Caruso, 569 F.3d 258, 267 (6th Cir. 2009). Perhaps Defendants are able to satisfy all of the Turner factors. They are, however, unable to do so on the record currently before the court. The undersigned therefore recommends denying Defendants' motion as to Plaintiff's claim related to items "that could potentially violate the intellectual property rights of others."[2]

---

[1] While not dispositive, it is interesting to note that the policy of which Plaintiff complains–the policy removing items "that could potentially violate the intellectual property rights of others"–is *not* listed in either the Detention Center's Mail Regulations or Policy Number 13-1-1. (Mueller Aff. Ex. A; Padgett Ex. B.) Of course, failure to follow a policy does not, in itself, amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

[2] Defendants seeks summary judgment on Plaintiff's claims on several grounds, one of which is qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Although Defendants may ultimately be entitled to qualified immunity, the undersigned cannot recommend–at this time–concluding Defendants are entitled to qualified immunity on the claim related to items "that could potentially violate the intellectual property rights of others" without any proffered connection between this policy and any interest of the Detention Center.

Plaintiff also complains that "Defendants or persons under their chain of command illegally violated the Plaintiff's right to mail privacy by, on several occasions, completely reading the Plaintiff's mail." (Dkt. No. 1.) Pursuant to the Detention Center's policies and procedures, "Detention Center staff receives and inspects all incoming mail for contraband." (Padgett Aff. ¶ 3.) The Detention Center's policies further provide that "[i]ncoming mail from persons or organizations identified as privileged may be opened only for the purpose of

To the extent Plaintiff claims Defendants have denied his right to practice his religious beliefs by "denying him reasonable access to the . . . mail by denying him the ability to receive paper back [sic] books on studying his faith, Christian magazines, Christian sermon pamphlets, Bibles, and other Christian materials," that claim fails. Pursuant to the Detention Center's policies and procedures, "[a]ny books or magazines for a specific inmate" are not accepted; such books or magazines are distributed throughout the Detention Center. (Mueller Aff. Ex. A.) According to Defendants, paper materials are not allowed to accumulate in cells because of the "potential fire hazards and other safety and security concerns," such as the fact that "quantities of paper materials can be used . . . to create weapons." (Padgett Aff. ¶ 5.) The first Turner factor is satisfied; all books and magazines (with the exception of one Bible) are not allowed to be sent to one inmate but are instead distributed throughout the Detention Center, as there is a fire and security hazard present when too many papers accumulate in cells. See Bell v. Wolfish, 441 U.S. 520, 550-51

---

verifying the addressee and addresser or to ascertain that nothing other than legal and/or official matter is enclosed." (Padgett Aff. Ex. B.) According to these policies and procedures, "[p]rivileged mail shall only be opened in the presence of the inmate." (Id.)

     Policies allowing prison administrators to open non-legal mail and inspect for contraband have been upheld time and again. See Bennett v. Georgetown Cnty. Det., C/A No. 2:10–762–MBS–RSC, 2010 WL 5866595, at *7 (D.S.C. Nov.4, 2010) (adopted at 2011 WL 723131 (D.S.C. Feb.23, 2011)); Ray v. Metts, C/A No. 4:04–23048–TLW–TER, 2009 WL 2983008, at *6–9 (D.S.C. Sept.14, 2009) (finding the Florence County Detention Center's policy constitutional where all mail to prisoners was opened and inspected for contraband and incoming legal mail was opened in the prisoner's presence). Plaintiff did not allege Defendants read his legal mail. As such, the claim related to the alleged reading of Plaintiff's mail fails. See Altizer v. Deeds, 191 F.3d 540, 547-49 (4th Cir.1999) (opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penalogical interest, and is therefore constitutional); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir.1999) (prison security is legitimate governmental interest justifying limitations on inmate's First Amendment rights); Wolff v. McDonnell, 418 U.S. 539, 576 (1974) ("[F]reedom from censorship is not equivalent to freedom from inspection or perusal."); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir.1986) (upholding regulations authorizing prison officials to inspect incoming or outgoing non-legal mail for contraband against First Amendment challenges).

     To the extent Plaintiff complains about deprivation of property, that claim is not cognizable pursuant to § 1983. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir. 1986); see also Pittman v. Doty, No. 8:09-0801-MBS, 2009 WL 1160933 (D.S.C. Apr. 29, 2009).

(1979) ("We conclude that a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of MCC inmates. That limited restriction is a rational response by prison officials to an obvious security problem. It hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings."); Ham v. Padula, 6:10–3058–JMC–KFM, 2012 WL 602836, at *3 (D.S.C. Feb. 2, 2012) (adopted at 2012 WL 602817 (D.S.C. Feb. 24, 2012)) (upholding prohibition on receipt of subscription magazines, newspapers, and books for SMU inmates).

The undersigned concludes the other Turner factors are satisfied with respect to the restriction on books, magazines, and pamphlets. Plaintiff has several alternative means of practicing and/or learning about religion. He is permitted to have a Bible in his cell, and he is permitted to "pray and discuss his beliefs with other detainees." (Padgett Aff. ¶¶ 6, 13.) In addition, upon request, Plaintiff is able to meet with the Cherokee County Sheriff's Office chaplain at the Detention Center, and he is also allowed to visit with "[l]aypersons from various churches [who] routinely visit the Detention Center." (Id. ¶¶ 14-15.) Allowing unlimited publications into the Detention Center would put other inmates and guards at risk of physical injury from fire or weapons, and there are no "ready alternatives" for furthering these governmental interests set forth. See Overton v. Bazzetta, 539 U.S. 126, 136 (2003) ("Turner does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal."); see also Beard v. Banks, 548 U.S. 521 (2006) (concluding a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment because the reason for the policy satisfied the Turner standard); Tarpley v.

11

Allen County, Indiana, 312 F.3d 895, 898-99 (7th Cir. 2002) (upholding policy denying inmate use of his own Bible, and requiring him to use the jail's Bible, because, *inter alia*, "the jail's policy with respect to reading materials is reasonably related to the general interest in maintaining safe conditions and in preventing later disputes over lost or damaged items").[3] Accordingly, the undersigned recommends granting summary judgment to Defendants on Plaintiff's claim related to the free exercise clause of the First Amendment.

---

[3]To the extent Plaintiff attempts to allege a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, that claim fails. The RLUIPA prohibits state programs that receive federal funding from imposing a substantial burden on the religious exercise of an inmate unless the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1. The Fourth Circuit has held that "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir.2006). Plaintiff's conclusory allegation–that Defendants "violated [his] . . . rights to practice his religious beliefs by denying him reasonable access to the United States mail by denying him the ability to receive paper back [sic] books on studying his faith, Christian magazines, Christian sermon pamphlets, Bibles, and other Christian materials"–is insufficient to state a claim. There is no evidence of a substantial burden on religious exercise–Plaintiff is permitted to have a Bible in his cell, and there is no allegation or evidence that the Detention Center has insufficient religious materials. See Blount v. Owens, No. 7:10CV00343, 2010 WL 3210945, at *2-3 (W.D. Va. Aug. 10, 2010) ("Blount fails to demonstrate that the defendants have violated, or are violating, his sincerely held religious beliefs. First, Blount does not provide the court with any information whatsoever about his current religious beliefs or demonstrate that those beliefs require him to observe Ramadan or possess and study the books that prison officials confiscated. Blount merely asserts that the deprivation of his books and of Ramadan participation will violate his beliefs. Such conclusory assertions, without facts alleged in support, are insufficient to state an actionable claim. Blount fails to allege facts demonstrating that his religious practice will be substantially burdened if he is not allowed to possess the confiscated literature or participate in the Ramadan fast." (citations omitted)); see also Corey v. S.C. Dep't of Corrs., C.A. No. 0:05-1559-HMH-BM, 2007 WL 29024, 2007 WL 29024, at *8 (D.S.C. Jan. 3, 2007) ("Based on the evidence before the Court, the undersigned does not find that the policies at issue (the service of meat during Lent, the denial of rosary beads, and the returning to the publisher of religious books that had been ordered) impose a substantial burden on the exercise of Plaintiff's religious rights."); Nicholas v. Ozmint, No. 8:04-22471-RB, 2006 WL 895017 (D.S.C. Mar. 31, 2006).

**B. Motion to Amend**

    **1. Standard of Review**

Rule 15(a) provides that when more than twenty-one days have elapsed since an answer was served, leave of court is required for a plaintiff to amend his complaint without the defendant's consent. FED. R. CIV. P. 15(a). "The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Fourth Circuit has interpreted Rule 15(a) "to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426-27 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

    **2. Analysis**

In his Motion to Amend, Plaintiff seeks to add the following individuals as defendants: Marcy Queen and Christy Quinn. (Dkt. No. 26.) According to Plaintiff, these two individuals should be added because they "share the responsibility of sorting the daily mail and therefore handle the Plaintiff's mail in question." (Dkt. No. 26 at 1 of 2.) Defendants oppose this motion, and ask the Court to deny the motion for the following reasons: (a) the motion is untimely; (b) the amendment is futile; and (c) the proposed new defendants are entitled to qualified immunity. (Dkt. No. 29.)

Defendants contend the motion was untimely because it "was not filed until August 29, 2012, more than three months after the Court's Order requiring that he sufficiently identify Defendants and after dispositive motions were due." (Dkt. No. 29 at 2 of 5.) Defendants are correct that Plaintiff filed his Motion to Amend after Defendants filed their Motion for Summary Judgment. It is worth noting, however, that the Order Defendants reference in their motion set forth no deadlines for filing motions to amend the complaint,

and Plaintiff did file his motion at the same time he filed his Response in Opposition to the Motion for Summary Judgment. In any event, a delay in bringing a proposed amendment is insufficient reason to deny leave to amend. See Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

Defendants also contend the Motion to Amend should be denied on the grounds of futility and because Defendants are entitled to qualified immunity. As set forth above, the undersigned concludes an amendment–with respect to the claim related to items "that could potentially violate the intellectual property rights of others" would not be futile. Furthermore, as set forth above, it is impossible to decide–on the record before this Court–whether any defendant (current or proposed) would be entitled to qualified immunity on this claim. For these reasons, the undersigned recommends granting Plaintiff's Motion to Amend.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 22) be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned recommends denying Defendants' Motion for Summary Judgment–*without prejudice*–as to Plaintiff's claim related to items "that could potentially violate the intellectual property rights of others." The undersigned recommends granting Defendants' motion as to all other claims.

The undersigned further recommends that Plaintiff's Motion to Amend (Dkt. No. 26) be GRANTED, and that, should the assigned District Judge adopt this Report and Recommendation, Plaintiff be given twenty (20) days from the date of the District Judge's order within which to file an Amended Complaint.

  IT IS SO RECOMMENDED.

                 s/Bruce Howe Hendricks
                 United States Magistrate Judge

January 2, 2013
Charleston, South Carolina

  **The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).